## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MELNOR, INC. | : |
| Plaintiff, | : |
| v. | : Court No. 1:25-cv-00052 |
| UNITED STATES OF AMERICA, | : |
| Defendant. | : |

## COMPLAINT

Plaintiff, Melnor, Inc., by and through its attorneys, brings this action seeking a judgment against the United States of America, and alleges:

## NATURE OF THE ACTION

1.      Over the last four decades, U.S. Customs and Border Protection ("CBP") has consistently ruled that sprinklers and other lawn and garden watering implements are agricultural or horticultural products classifiable under Harmonized Tariff Schedule of the United States ("HTSUS") subheading 9817.00.50 ("Machinery, equipment and implements to be used for agricultural or horticultural purposes") and are therefore eligible for duty-free treatment.

2.      Over that same period, and to ensure that HTSUS subheading 9817.00.50 is economically and administratively feasible for importers to use and for CBP to administer as Congress intended, CBP established and applied "actual use" standards that allow importers of retail goods, that because of their nature, level of distribution, value, size and other relevant factors evidence, with no more than a fugitive non-agricultural use, to certify that such products will actually be used for agricultural or horticultural purposes at the time of importation—and before the products have actually reached retail consumer end-users.

3.      CBP, in the administrative proceedings challenged in this action, abandoned these longstanding precedents by denying duty-free treatment under HTSUS subheading 9817.00.50 to more than one hundred entries of Melnor sprinklers and other lawn and garden watering implements and by preemptively declaring that HTSUS subheading 9817.00.50 treatment "CAN NO LONGER BE CLAIMED" by Melnor on future entries of Melnor's sprinklers and other lawn and garden watering implements.

4.      CBP's actions are unlawful because, in rejecting Melnor's claim that its sprinklers and other lawn and garden watering implements were classifiable under HTSUS subheading 9817.00.50, CBP modified and/or revoked its prior interpretative rulings and decisions and had the effect of modifying the treatment that it previously had accorded to substantially identical Melnor entries without complying with the notice and comment procedures required by 19 U.S.C. § 1625(c).

5.      CBP's actions are also unlawful because the decades of CBP precedent and years of CBP treatment of Melnor entries created an established and uniform practice and, in abandoning this precedent, CBP imposed a higher rate of duty inconsistent with this established and uniform practice without complying with the notice and comment procedures of 19 U.S.C. § 1315(d) and 19 C.F.R. § 177.10(c).

6.      In addition to these statutory violations, CBP's decision to reject application of HTSUS subheading 9817.00.50 to Melnor's entry of sprinklers and other lawn and garden watering implements, without publishing this decision, as required by law, was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law because it revoked this treatment to Melnor, only, allowing all other importers of sprinklers and lawn and garden watering implements to claim and continue to claim duty-free treatment pursuant to 9817.00.50.

7.     Finally, CBP also acted arbitrarily and capriciously because Melnor's lawn and garden watering products satisfy all three elements necessary for duty-free treatment as agricultural or horticultural implements.

## PARTIES

8.     Melnor is a corporation organized and existing under the laws of the State of Delaware, and headquartered in Winchester, Virginia.

9.     Melnor imports lawn and garden watering implements into the United States under Importer No. 52-204599700.

10.     The Defendant is the United States of America. The conduct complained of in this action was taken by its agency, CBP, which is a component of the U.S. Department of Homeland Security, and CBP officials.

## JURISDICTION

11.     This Court has subject-matter jurisdiction over this action, and personal jurisdiction over Defendant, under 28 U.S.C. § 1581(a), which vests this Court with "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." 28 U.S.C. § 1581(a).

12.     On January 10, 2025, Melnor filed its protest of Entry No. 91651262031 with CBP pursuant to 19 U.S.C. § 1514, which the CBP docketed as Protest No. 460125138102. *See* Exhibit 1. This protest was timely filed pursuant to 19 C.F.R. § 174.12, "within 180 days of a decision relating to an entry made on or after December 18, 2004 . . ." after "[t]he date of notice of liquidation or reliquidation," relating to a CF-29 issued on November 1, 2024, for an entry liquidated on November 8, 2024. *See* 19 C.F.R. § 174.12(e)(1).

13.    Also on January 10, 2025, Melnor submitted a request for accelerated disposition of Protest No. 460125138102 via certified mail, pursuant to 19 U.S.C. § 1515(b) and 19 C.F.R. § 174.22. *See* Exhibit 2.

14.    CBP did not allow or deny, in whole or in part, Protest No. 460125138102 within thirty days after Melnor submitted its request for accelerated disposition, and still has not allowed or denied the protest as of the date of filing of this complaint.

15.    Because CBP did not allow or deny, in whole or in part, Protest No. 460125138102 within thirty days following Melnor's submission of its request for accelerated disposition by certified mail, Protest No. 460125138102 was deemed denied as of February 10, 2025, for purposes of jurisdiction under § 1581(a). 19 U.S.C. § 1515(b); 19 C.F.R. § 1744.22(d).

16.    In compliance with 28 U.S.C. § 2637(a), Melnor paid all liquidated duties, charges, and exactions related to Entry No. 91651262031 on February 14, 2025. *See* Exhibit 3.

17.    Melnor has standing to bring this action under 28 U.S.C. § 2631(a) based on the denial of Protest No. 460125138102 and under 5 U.S.C. § 702 because Melnor is adversely affected, aggrieved, and is suffering a legal wrong caused by CBP's action denying Entry No. 91651262031 duty-free treatment under HTSUS subheading 9817.00.50 and in ruling that HTSUS subheading 9817.00.50 can no longer be claimed for various other Melnor products.

18.    This civil action is timely because this complaint is being filed within 180 days after Protest No. 460125138102 was deemed denied on February 10, 2025, by operation of law under 19 U.S.C. § 1515(b) and 19 C.F.R. § 1744.22(d). 28 U.S.C. § 2636(a)(2).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

19.    Melnor was founded in 1946 by the inventor of an oscillating sprinkler which solved traditional sprinklers' problem of leaving the middle of lawns muddy and the edges dry.

20.     Since then, Melnor has developed over 155 patents for lawn and garden watering implements, has become a brand beloved by lawn and garden enthusiasts, and continues to fulfill its mission of providing quality lawn and garden sprinklers, nozzles, and watering wands.

21.     Today, Melnor designs, develops, imports, and distributes lawn and garden watering implements, including oscillating sprinklers, in-ground sprinklers, mechanical and Bluetooth water timers, extendable watering wands, and multiple spray hose nozzles.

22.     Melnor's imported lawn and garden watering implements are sold to lawn and garden stores for retail distribution and used by consumers for watering their lawns, gardens, crops, and other plants.

### *Melnor's Anvil Spike Sprinkler*

23.     One such product is Melnor's Pulsating Lawn Sprinkler, SKU 10505HD (the "Anvil Spike Sprinkler"), sold under The Home Depot "Anvil" brand of products and shown in the image below:



24.    The Anvil Spike Sprinkler is a pulsating metal spike sprinkler designed to water gardens, lawns, and other plants.

25.    The Anvil Spike Sprinkler is designed for attachment to a common garden hose and can be used with a single hose or mounted in a series with multiple hoses and/or sprinklers.

26.    The Anvil Spike Sprinkler features a circular watering pattern and an irrigation footprint between 3,300 and 5,670 square feet.

27.    The dimensions and utility of the Anvil Spike Sprinkler make it compatible with common garden hose dimensions and appropriate to use as small water area irrigation equipment.

28.    Based on its design and features, the Anvil Spike Sprinkler is marketed, sold, and intended for use in agricultural or horticultural applications, such as in a home garden or for domestic landscaping.

29.    The Anvil Spike Sprinkler is advertised and depicted in marketing materials to be used for watering gardens, lawns, flowers, and other plants, and in other horticultural settings, as shown in the following promotional images:

 

30.    The Anvil Spike Sprinkler is distributed by The Home Depot, which specializes in the sale of agricultural or horticultural equipment, through internet sales and through its "brick and mortar" stores, including its Garden Centers, which are locations that are reasonably expected to serve persons who will use the sprinkler for its intended horticultural purpose.

31.    The Anvil Spike Sprinkler is advertised on The Home Depot's website for use as a garden and lawn watering tool, with images and video of the product being used to water home lawns and gardens and the following textual description of the product:

> Durable Pulsating Sprinkler on Metal Spike showers a gentle rain of water to keep your lawn and garden healthy all season. Cover an area with up to an 85 ft. dia (up to 5,670 sq. ft.), great for watering large yards and gardens. Adjust the spray distance or spray angle to fit your watering needs. Connect multiple units in a series to reach an even larger area. The sturdy metal spike is easy to place, even in hard soil. Keep your lawn green and garden growing for seasons to come.

The Home Depot, *Anvil Pulsating Lawn Sprinkler*, https://www.homedepot.com/p/Anvil-Pulsating-Lawn-Sprinkler-10505HDDI/326012643.

### CBP's Prior Applications of HTSUS Subheading 9817.00.50
### to Lawn and Garden Watering Implements

32.    HTSUS subheading 9817.00.50 is the provision covering machinery, equipment, or implements to be used in agricultural or horticultural pursuits.

33.    HTSUS subheading 9817.00.50 is an actual use provision subject to the certification process found in 19 C.F.R. §§ 10.131–10.139.

34.    CBP has established a three-part test to determine whether a product qualifies for duty-free treatment under HTSUS subheading 9817.00.50: (1) the product's ordinary (Chapter 1-97) tariff classification must not be excluded from HTSUS subheading 9817.00.50 by Chapter 98, Subchapter XVII, U.S. Note 2; (2) the product must meet the terms of HTSUS subheading 9817.00.50 (*i.e.*, the product must be machinery, equipment, or an implement used for agricultural or horticultural purposes); and (3) the product must fulfill the actual use requirements of 19 C.F.R. §§ 10.131–10.139.

35.    For nearly forty years, CBP has consistently ruled that lawn and garden sprinklers like Melnor's Anvil Spike Sprinkler are properly classified for duty-free treatment under HTSUS subheading 9817.00.50. *See* HQ H312791 (July 6, 2022) (granting protest and classifying pop-up sprinklers under subheading 9817.00.50); HQ H307416 (Feb. 12, 2020) (spike sprinklers with motion sensor); HQ 557232 (Sept. 28, 1993) (granting protest and classifying various sprinklers under subheading 9817.00.50 because watering turf and gardens was a horticultural purpose); *see also* NY N310819 (April 6, 2020) (tripod lawn impulse sprinklers); NY N304805 (July 2, 2019) (spike sprinklers and spike sprinkler kits with hoses); NY N301497 (Nov. 20, 2018) (oscillating garden sprinklers); NY N121835 (Sept. 30, 2010) (oscillating lawn sprinkler); NY N113943 (July 29, 2010) (pulsating lawn spike sprinklers); NY N069760 (Aug. 12, 2009) (oscillating sprinklers designed for domestic use); NY N014417 (Aug. 16, 2007) (sprinklers used for

residential and light commercial turf watering); NY K89064 (Sept. 27, 2004) (circular fan sprinklers); NY K89402 (Sept. 21, 2004) (revolving sprinklers); NY K88493 (Aug. 18, 2004) (rotating sprinklers designed to be attached to a garden hose and used to water home lawns and gardens); NY K81616 (Dec. 30, 2003) (ring sprinklers designed to be attached to a garden hose to water home lawns and gardens); NY E85578 (Aug. 16, 1999) (rotary sprinkler risers); NY A88241 (Oct. 18, 1996) (shrub head and flood bubbler sprinklers); NY A86380 (Aug. 13, 1996) (circular and pulsating sprinklers); NY 872754 (Apr. 7, 1992) (oscillating and impulse sprinklers); NY 826754 (Jan. 14, 1988) (impulse sprinkler, oscillating sprinkler, heavy duty nozzle, gentle spray wand, hose and reel system, and pop-up spray head).

36.     CBP also has a long line of rulings classifying other lawn and garden watering implements for duty-free treatment under HTSUS subheading 9817.00.50. *See* NY N327383 (Aug. 9, 2022) (handheld plant misters, sprayers, and watering wands); NY N324135 (Mar. 1, 2022) (adjustable nozzles); NY N310806 (Apr. 6, 2020) (fireman-style nozzles to be used in home gardens and landscaping settings); NY N310334 (Mar. 13, 2020) (handheld battery-operated sprayer wands); NY N308542 (Jan. 15, 2020) (dial and twist nozzles); NY N301171 (Nov. 15, 2018) (water timers, watering nozzles, and garden watering sprinkler systems); NY N279744 (Oct. 12, 2016) (watering wands); NY N088755 (Jan. 13, 2010) (various hand-operated spray nozzles that attach to a standard garden hose); NY N014421 (Aug. 16, 2007) (indoor/outdoor irrigation sprinkler controllers); NY N015147 (Aug. 13, 2007) (modular irrigation timing controllers for residential and light commercial use, sprinkler timers, and valves); NY K81616 (Dec. 30, 2003) (hose bib timers); HQ 955727 (Apr. 14, 1994) (water sprinkler controllers); NY 826754 (Jan. 14, 1988) (impulse sprinkler, oscillating sprinkler, heavy duty nozzle, gentle spray wand, hose and reel system, and pop-up spray head).

***CBP's Interpretive Rulings and Decisions on the
Standards for Certifying Actual Use for HTSUS Subheading 9817.00.50***

37.     Since at least 1982, CBP has issued a series of interpretive rulings and decisions

on how to apply CBP's "actual use" regulations, 19 C.F.R. §§ 10.131–10.139, to claims of duty-

free treatment under HTSUS subheading 9817.00.50, including with respect to goods that are

imported in large shipments and then distributed to wholesale and/or resale distributors who sell

them to retail consumers and for goods that are per se agricultural or horticultural. *See, e.g.*, NY

N278132 (Aug. 31, 2016); HQ 958114 (Nov. 8, 1995); HQ 956726 (Oct. 25, 1994); HQ 953152

(Mar. 15, 1993); HQ 950223 (Dec. 4, 1991); Customs Service Decision ("C.S.D.") 83-32, 17

Cust. B. & Dec. 773, 1982 WL 182954 (Nov. 29, 1982) (HQ 069623), *reprinted & discussed in*

U.S. Customs & Border Protection, *What Every Member of the Trade Community Should Know

About: The Agricultural Actual Use Provisions – Tariff Classification Issues of Headings

9817.00.50 and 9817.00.60* (Sept. 2015),

https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/ICP-Agricultural-Actual-

Use-Provisions-2015-Final.pdf.

38.     Among other things, this line of interpretive rulings and decisions "give effect to

the intent" of HTSUS subheading 9817.00.50 by "reducing the economic and administrative

burden on both importers and the [CBP]." C.S.D. 83-32.

39.     Based on CBP's recognition of "the difficulty of showing actual use for retail

goods"— since they "are imported in large shipments and then distributed to numerous

wholesale or resale distributors"— these interpretive rulings and decisions allow importers of

retail goods to establish actual use through "[a] certification by the importer which states that the

article(s) may only be used for the agricultural or horticultural use for which they are intended"

and through "blanket certifications" which "may be accepted at the time of importation." NY N278132 (Aug. 31, 2016).

40.    These interpretive rulings and decisions likewise recognize that CBP's evaluation of an importer's actual use certification must "be reasonably tied to the circumstances of each case," and CBP "must" give consideration to "[a]ll . . . relevant factors," including "the nature of an imported article," its "level of distribution," and the "value and size of [the] importation." C.S.D. 83-32.

41.    These interpretive rulings and decisions also recognize that an importer's actual use submissions may be "evaluate[d] in a light most favorable to [the importer]" since the actual use requirements cannot be made so "economically and administratively unfeasible" or "burdensome" that HTSUS subheading 9817.00.50 is "ineffective in providing the intended duty-free benefits" to importers. HQ 953152 (Mar. 15, 1993).

42.    These interpretive rulings and decisions recognize that in "many situations" it will be appropriate for an importer to certify a product's actual use "before the imported articles reach the end-users" because (1) "evidence of a sale" to a "distributor" can be "sufficient evidence of actual-use even though the articles have not yet been delivered" since they "have been entered into the chain of commerce which will result in the required end-use" and (2) requiring otherwise would ignore "practical considerations" and would contradict Congress's intent to make HTSUS subheading 9817.00.50 an "economically viable preferential provision[]." C.S.D. 83-32.

43.    Therefore, under these interpretive rulings and decisions, an importer can have sufficient "knowledge" to certify actual use even though the goods "have not been actually traced to each end user," C.S.D. 83-32, and importers can establish actual use in many instances

based on evidence of the nature of the product itself, particularly where the product is per se agricultural or horticultural. *See* NY N278132 (Aug. 31, 2016) (finding that a "greenhouse, by its very nature, is used for horticultural purposes" and, based on the "difficulty of showing actual use for retail goods," a "blanket certification[]" submitted by the importer at the "time of importation" could satisfy actual use); HQ 958114 (Nov. 8, 1995) (finding importer had "sufficient knowledge" to certify actual use because plastic syringes were "per se agricultural" based on their "style and dimensions"); HQ 956726 (Oct. 25, 1994) (holding importer could certify actual use for bamboo rakes because "[t]he raking of grass cuttings, leaves and other debris from lawns, flower beds and gardens is per se agricultural or horticultural"); HQ 950223 (Dec. 4, 1991) (finding it was reasonable "to regard the importer as having sufficient knowledge" to certify actual use because fiberglass growth stakes "are per se agricultural or horticultural").

### *CBP's Abrupt Refusal to Apply HTSUS Subheading 9817.00.50 to Entry No. 91651262031 and Future Entries of Melnor Products*

44.    For more than six years prior to the liquidation of Entry No. 91651262031, Melnor classified its lawn and garden watering implements, including the Anvil Spike Sprinkler, under HTSUS subheading 9817.00.50.

45.    During these six years, Melnor personnel certified actual use at the time of importation — before the lawn and garden watering implements reached their end-users — and based on the horticultural nature of the products and the circumstances of their sale to retail distributors who in turn would be selling the products to the retail customer end-users.

46.    Across more than 1,000 unique entries imported through four different ports, CBP regularly found that Melnor had satisfied the actual use requirements and liquidated the entries of Melnor's sprinklers and lawn and garden watering implements, including the Anvil Spike Sprinkler, as duty-free under HTSUS subheading 9817.00.50 during this six-year period, after

determining that Melnor had presented "satisfactory proof of timely use of the merchandise for the purposes specified by law. 19 C.F.R. § 10.139(a).

47.    Then, in April 2024, Melnor imported 380 cartons of Anvil Spike Sprinklers from China into New York, NY, under Entry No. 91651262031.

48.    Entry No. 91651262031 had an Entry Date of April 1, 2024, and an Import Date of April 2, 2024. *See* Exhibit 1 at 18–32 for full Entry Packet.

49.    Relying on CBP's prior interpretative rulings and decisions regarding the classification of lawn and garden watering implements under HTSUS subheading 9817.00.50 and the CBP's past treatments of Melnor lawn and garden watering implements, including Anvil Spike Sprinklers, under that provision, Melnor declared that the Anvil Spike Sprinklers imported against Entry No. 91651262031 were properly classified under HTSUS subheading 9817.00.50.

50.    Relying on CBP's prior interpretive rulings and decisions regarding the standards for actual use certification of retail goods for duty-free treatment under HTSUS subheading 9817.00.50 and the CBP's past treatments of Melnor lawn and garden watering implements, including Anvil Spike Sprinklers, under that provision, Melnor submitted a Proof of Use Certification of actual use with Entry No. 91651262031 and with each of the 133 other entries of lawn and garden watering implements based on the horticultural nature of the products and the circumstances of their sale to retail distributors who in turn would be selling the products to the retail customer end-users.

51.    On November 1, 2024, CBP issued a Customs Form 29 Notice of Action, under 19 C.F.R. § 152.2 ("Notification to importer of increased duties"), with respect to 134 Melnor entries, including Entry No. 91651262031, under lead Entry No. 91650670747 (the "CF-29"). *See* Exhibit 4.

52.     In the CF-29, CBP stated "THAT 9817 AGRICULTURAL AND HORTICULTURAL PROVISION HAS NOT BEEN MET," and, specifically, that "PART 3 OF THE PROVISION TEST HAS NOT BEEN MET."

53.     In the CF-29, CBP further stated that "THIS PRODUCT (SPRINKLERERS [sic], NOZZLE, IRRIGATION) DOES NOT QUALIFY FOR THE 9817 PROVISION AND CAN NO LONGER BE CLAIMED."

54.     On November 8, 2024, CBP liquidated Entry No. 91651262031 with a rate advance.

55.     Contemporaneously with CBP's consideration of Entry No. 91651262031 and during the months leading up to CBP's issuance of the CF-29, the same CBP Import Specialist who issued the CF-29 engaged in written correspondence with Melnor about the application of HTSUS subheading 9817.00.50 to other Melnor entries in relation to a Customs Form 28 Request for Information and another proposed Customs Form 29 Notice of Action. *See* Exhibit 5 for previous CF-28 Request for Information and CF-29 Proposed Notice of Action which resulted in liquidations with no change; *see also* Exhibit 1, Protest Attachments C & E at 43–64 and 69–72.

56.     Through this correspondence, Melnor provided the CBP Import Specialist with prior CBP interpretive rulings and decisions addressing both the application of HTSUS subheading 9817.00.50 to lawn and garden watering implements and the relevant standards that apply to the actual-use certification process. *See* Exhibit 1, Protest Attachments C & E at 45–46 and 69–72.

57.     The CBP Import Specialist ultimately responded by indicating that considered deliberations within CBP had led CBP to conclude that HTSUS subheading 9817.00.50 could no

longer be applied to Melnor's products, as reflected in the CF-29, stating: "After carefully reviewing all the rulings you pointed out we (CBP) have concluded that the sprinkles [sic] and nozzles advertised by Melnor are multipurpose, and they are not specifically used for agricultural/horticultural purposes, [sic] actual use provision does not apply." *See* Exhibit 1, Protest Attachment C at 44.

58.    On January 10, 2025, Melnor filed its protest of Entry No. 91651262031, docketed as Protest No. 460125138102, and a request for accelerated disposition with CBP.

59.    Because of CBP's unpublished direction to Melnor that HTSUS subheading 9817.00.50 "CAN NO LONGER BE CLAIMED" for Anvil Spike Sprinklers and other lawn and garden watering implements, Melnor is at a significant commercial disadvantage, as its competitors may continue to classify similar or identical sprinklers and lawn and garden watering implements under HTSUS subheading 9817.00.50.

60.     Melnor requires immediate review by this Court of CBP's conclusion that HTSUS subheading 9817.00.50 does not apply to Entry No. 91651262031 and cannot be claimed on future entries of Melnor's Anvil Spike Sprinklers and other law and garden watering implements, in order to eliminate this bias and level the playing field between itself and its competitors.

**COUNT I:**
**VIOLATION OF 19 U.S.C. § 1625(c)(1) BASED ON PRIOR INTERPRETIVE RULINGS AND DECISIONS APPLYING HTSUS SUBHEADING 9817.00.50**

61.    Melnor restates and incorporates by reference the allegations contained in Paragraphs 1 through 60 of its Complaint as if fully stated herein in Count I.

62.    The nearly four decades of CBP rulings and decisions recognizing sprinklers and other lawn and garden watering implements as eligible for duty-free status under HTSUS

subheading 9817.00.50, cited above, constitute prior interpretive rulings or decisions that had been in effect for at least sixty days at the time of the issuance of the CF-29.

63.     The CF-29 is an interpretive ruling or decision that modifies and/or revokes CBP's prior interpretative rulings and decisions on the application of HTSUS subheading 9817.00.50 to sprinklers and other lawn and garden watering implements.

64.     The CF-29 qualifies as an interpretative ruling or decision revoking CBP's prior interpretive rulings and decisions because it was the result of considered deliberations within CBP and because it explicitly has a prospective effect, broadly proclaiming that HTSUS subheading 9817.00.50 "CAN NO LONGER BE CLAIMED" on any future entries of Melnor sprinklers and other garden and lawn watering implements. *See Int'l Custom Prods.*, 748 F.3d at 1187; *Under the Weather, LLC v. United States*, 728 F. Supp. 3d 1337, 1350 (Ct. Int'l Trade 2024); *see also* Exhibit 1, Protest Attachment C at 44; Exhibit 4.

65.     Section 1625(c)(1) states in relevant part:

A proposed interpretive ruling or decision which would--

> (1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days;

> . . .

shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

19 U.S.C. § 1625(c)(1).

66.     The CF-29 was wrongfully issued without compliance with § 1625(c)'s notice and comment requirements.

67.     Because CBP failed to comply with § 1625(c)'s notice and comment requirements, CBP's prior interpretive rulings and decisions recognizing the application of HTSUS subheading 9817.00.50 to lawn and garden watering implements used for horticultural purposes were binding on CBP and were required to be applied to Entry No. 91651262031 and the other 133 entries covered by the CF-29. *See* 19 C.F.R. § 177.9; *Int'l Custom Prods.*, 748 F.3d at 1186-87.

68.     Because the CF-29 effectively revoked CBP's prior interpretive rulings and decisions without compliance with § 1625(c)'s notice and comment procedures, the CF-29 is void and Melnor requests that this Court order Entry No. 91651262031 and any other entry liquidated in accordance with the CF-29 be reliquidated without reference to the CF-29.

69.     Because the CF-29 is void, Melnor requests that this Court reinstate the treatment previously accorded to Melnor and as reflected in the forty years of Customs rulings, permitting Melnor to classify its sprinklers and other lawn and garden watering implements at the time of entry under HTSUS subheading 9817.00.50. *See Int'l Custom Prods.*, 748 F.3d at 1189.

**COUNT II:**
**VIOLATION OF 19 U.S.C. § 1625(c)(2) BASED ON CBP'S PREVIOUS**
**TREATMENTS APPLYING HTSUS SUBHEADING 9817.00.50**
**TO SUBSTANTIALLY IDENTICAL TRANSACTIONS**

70.     Melnor restates and incorporates by reference the allegations contained in Paragraphs 1 through 69 of its Complaint as if fully stated herein in Count II.

71.     For more than six years prior to the liquidation of Entry No. 91651262031, Melnor classified its sprinkler and other lawn and gardening watering implements, including the Anvil Spike Sprinkler, under HTSUS subheading 9817.00.50.

72.    CBP regularly liquidated these entries as duty-free, accepting the classification of the sprinklers and other lawn and garden watering implements under HTSUS subheading 9817.00.50, including more than 1,000 unique entries imported through four different ports.

73.    These prior liquidated entries containing merchandise classified under HTSUS subheading 9817.00.50 were transactions substantially identical to Entry No. 91651262031.

74.    CBP liquidated these entries after affirmatively determining that "satisfactory proof of timely use of the merchandise for the purpose specified by law," had been presented. 19 C.F.R. § 10.139(a).

75.    CBP's liquidation of these entries as duty-free under HTSUS subheading 9817.00.50 constitute a treatment previously accorded by CBP to substantially identical transactions.

76.    In addition to CBP's affirmative determinations regarding the satisfactory proof of actual use as is required by 19 C.F.R. § 10.139(a), CBP has liquidated Melnor's entries of sprinklers and lawn and garden watering implements after specifically requesting additional information about the same:  (1) on February 28, 2020, CBP reliquidated five Melnor entries (HTD32380588, HTD32390181, HTD32391197, HTD32391270, and HTD32391601) following its review of the application of HTS 9817.00.50 and *retained* the HTS 9817.00.50 classification for certain sprinkler and wand product lines that had applied subheading 9817.00.50 (both at time of original entry and in a Post Summary Correction); (2) in February 2024, CBP issued Melnor a Form CF-28 Request for Information for entry 91650719312 requesting information about the pictures and descriptions of Melnor's imported products claiming duty-free treatment under subheading 9817.00.50, ultimately liquidating entry 91650719312 on March 15, 2024, with no change (*i.e.*, retaining the application of subheading 9817.00.50 finding that Melnor

*satisfactorily proved the timely use of the merchandise as required by law*); (3) on July 3, 2024, CBP issued a CF-29 for entry 91644009648 which was entered April 12, 2021 proposing to remove subheading 9817.00.50 from certain lines, but, following a dialogue with Melnor's legal counsel, CBP *did not reliquidate* the entry. *See* Exhibit 5.

77.     The November 1, 2024, CF-29 is an interpretive ruling or decision that has the effect of modifying the treatment previously accorded by CBP to substantially identical transactions, under which CBP liquidated entries of Melnor sprinklers and other lawn and garden watering implements as duty-free under HTSUS subheading 9817.00.50.

78.     The CF-29 qualifies as an interpretative ruling or decision that has the effect of modifying the treatment previously accorded by CBP to substantially identical transactions because it was the result of considered deliberations within CBP and because it explicitly has a prospective effect, broadly proclaiming that HTSUS subheading 9817.00.50 "CAN NO LONGER BE CLAIMED" on any future entries of Melnor sprinklers and other garden and lawn watering implements. *See Int'l Custom Prods.*, 748 F.3d at 1187; *Under the Weather*, 728 F. Supp. 3d at 1350; *see also* Exhibit 1, Protest Attachment C at 44; Exhibit 4.

79.     Section 1625(c)(2) states in relevant part:

A proposed interpretive ruling or decision which would--

> (2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;
>
> . . .

shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

19 U.S.C. § 1625(c)(2).

80.    The CF-29 was wrongfully issued without compliance with § 1625(c)'s notice and comment requirements.

81.    Because CBP failed to comply with § 1625(c)'s notice and comment requirements, CBP's previous treatment of Melnor sprinklers and other lawn and garden watering implements as duty-free under HTSUS subheading 9817.00.50 was binding on CBP and was required to be applied to Entry No. 91651262031 and the other 133 entries covered by the CF-29.

82.    Because the CF-29 had the effect of modifying the treatment previously accorded by CBP to substantially identical transactions, the CF-29 is void and this Court should order that 1) Melnor may claim treatment pursuant to HTSUS subheading 9817.00.50 for future importations of sprinklers and lawn and garden watering implements; and 2) Entry No. 91651262031 and the other entries covered by the CF-29 must be reliquidated and given the same duty-free treatment under HTSUS subheading 9817.00.50 that was accorded to the entries liquidated in the previously substantially identical transactions.

### COUNT III:
### VIOLATION OF 19 U.S.C. § 1625(c)(1) BASED ON PRIOR INTERPRETIVE RULINGS AND DECISIONS ON THE ACTUAL USE CERTIFICATION PROCESS

83.    Melnor restates and incorporates by reference the allegations contained in Paragraphs 1 through 82 of its Complaint as if fully stated herein in Count III.

84.    The four-plus decades of CBP rulings and decisions establishing the standards for the actual use certification process for claiming duty-free treatment of retail goods under HTSUS subheading 9817.00.50, cited above, constitute prior interpretive rulings or decisions that had been in effect for at least sixty days at the time of the issuance of the CF-29.

85.    The CF-29 is an interpretive ruling or decision that modifies and/or revokes CBP's prior interpretative rulings and decisions establishing the standards for the actual use certification process for claiming duty-free treatment of retail goods under HTSUS subheading 9817.00.50.

86.    The CF-29 qualifies as an interpretative ruling or decision revoking CBP's prior interpretive rulings and decisions because it was the result of considered deliberations within CBP and because it explicitly has a prospective effect, broadly proclaiming that HTSUS subheading 9817.00.50 "CAN NO LONGER BE CLAIMED" on any future entries of Melnor sprinklers and other garden and lawn watering implements, regardless of the specific circumstances of future entries, including the level of distribution of the products, the value and size of the importations, and other relevant circumstances or evidence that Melnor might offer to satisfy the actual use requirements. *See Int'l Custom Prods.*, 748 F.3d at 1187; *Under the Weather*, 728 F. Supp. 3d at 1350; *see also* Exhibit 1, Protest Attachment C at 44; Exhibit 4.

87.    Section 1625(c)(1) states in relevant part:

A proposed interpretive ruling or decision which would--

> (1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days;
>
> . . .

shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

19 U.S.C. § 1625(c)(1).

88.    The CF-29 was wrongfully issued without compliance with § 1625(c)'s notice and comment requirements.

89.    Because CBP failed to comply with § 1625(c)'s notice and comment requirements, CBP's prior interpretive rulings and decisions establishing the standards for the actual use certification process for claiming duty-free treatment of retail goods under HTSUS subheading 9817.00.50 were binding on CBP and were required to be applied to Entry No. 91651262031 and the other 133 entries covered by the CF-29. *See* 19 C.F.R. § 177.9; *Int'l Custom Prods.*, 748 F.3d at 1186-87.

90.    Because the CF-29 effectively revoked CBP's prior interpretive rulings and decisions without compliance with § 1625(c)'s notice and comment procedures, the CF-29 is void and this Court should order that Entry No. 91651262031 and the other entries covered by the CF-29 must be reliquidated under CBP's prior interpretive rulings and decisions establishing the standards for the actual use certification process for claiming duty-free treatment of retail goods under HTSUS subheading 9817.00.50. *See Int'l Custom Prods.*, 748 F.3d at 1189.

**COUNT IV:**
**VIOLATION OF 19 U.S.C. § 1625(c)(2) BASED ON CBP'S PREVIOUS**
**TREATMENTS APPLYING THE ESTABLISHED ACTUAL USE**
**STANDARDS TO SUBSTANTIALLY IDENTICAL TRANSACTIONS**

91.    Melnor restates and incorporates by reference the allegations contained in Paragraphs 1 through 90 of its Complaint as if fully stated herein in Count IV.

92.    For more than six years prior to the liquidation of Entry No. 91651262031, Melnor classified its sprinkler and other lawn and gardening watering implements, including the Anvil Spike Sprinkler, under HTSUS subheading 9817.00.50, and Melnor personnel certified actual use at the time of importation—before the lawn and garden watering implements reached their end-users—based on the horticultural nature of the products and the circumstances of their

sale to retail distributors who in turn would be selling the products to the retail customer end-users.

93.    CBP regularly found that Melnor had satisfied the actual use requirements and liquidated these entries as duty-free under HTSUS subheading 9817.00.50, affirmatively determining that Melnor had presented "satisfactory proof of timely use of the merchandise for the purposes specified by law," 19 C.F.R. § 10.139(a), including for over 1,000 unique entries imported through four different ports.

94.    These prior liquidated entries submitted by Melnor under HTSUS subheading 9817.00.50 were transactions substantially identical to Entry No. 91651262031.

95.    CBP's liquidation of these entries as duty-free under HTSUS subheading 9817.00.50 constitute a treatment previously accorded by CBP to substantially identical transactions, as is indicated by the nearly forty years of rulings determining that sprinklers and other lawn and garden watering implements are classifiable under HTSUS subheading 9817.00.50.

96.    The CF-29 is an interpretive ruling or decision that has the effect of modifying the treatment previously accorded by CBP to substantially identical transactions, under which CBP liquidated entries of Melnor sprinklers and other lawn and garden watering implements as duty-free under HTSUS subheading 9817.00.50 and accepted, as "satisfactory proof" of actual use, 19 C.F.R. § 10.139(a), the certification from Melnor personnel submitted at the time of importation—before the lawn and garden watering implements reached their end-users—and based on the horticultural nature of the products and the circumstances of their sale to retail distributors who in turn would be selling the products to the retail customer end-users.

97.     The CF-29 qualifies as an interpretative ruling or decision that has the effect of modifying the treatment previously accorded by CBP to substantially identical transactions because it was the result of considered deliberations within CBP and because it explicitly has a prospective effect, broadly proclaiming that HTSUS subheading 9817.00.50 "CAN NO LONGER BE CLAIMED" on any future entries of Melnor sprinklers and other garden and lawn watering implements, regardless of the specific circumstances of future entries, including the level of distribution of the products, the value and size of the importations, and other relevant circumstances or evidence that Melnor might offer to satisfy the actual use requirements. *See Int'l Custom Prods.*, 748 F.3d at 1187; *Under the Weather*, 728 F. Supp. 3d at 1350; *see also* Exhibit 1, Protest Attachment C at 44; Exhibit 4.

98.     Section 1625(c)(2) states in relevant part:

A proposed interpretive ruling or decision which would--

> (2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;

> . . .

shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

19 U.S.C. § 1625(c)(2).

99.     The CF-29 was wrongfully issued without compliance with § 1625(c)'s notice and comment requirements.

100.    Because CBP failed to comply with § 1625(c)'s notice and comment requirements, CBP's previous acceptance of actual use certification from Melnor personnel

submitted at the time of importation—before the lawn and garden watering implements reached their end-users—and based on the horticultural nature of the products and the circumstances of their sale to retail distributors who in turn would be selling the products to the retail customer end-users was binding on CBP and was required to be applied to Entry No. 91651262031 and the other 133 entries covered by the CF-29.

101.    Because the CF-29 had the effect of modifying the treatment previously accorded by CBP to substantially identical transactions, the CF-29 is void and this Court should order that Entry No. 91651262031 and the other entries covered by the CF-29 must be reliquidated and given the same duty-free treatment under HTSUS subheading 9817.00.50 that was accorded to the entries liquidated in the previously substantially identical transactions.

**COUNT V:**
**VIOLATION 19 U.S.C. § 1315(d) AND 19 C.F.R. § 177.10(c)**
**BASED ON CBP'S IMPOSITION OF A HIGHER RATE OF DUTY**
**INCONSISTENT WITH AN ESTABLISHED AND UNIFORM PRACTICE**

102.    Melnor restates and incorporates by reference the allegations contained in Paragraphs 1 through 101 of its Complaint as if fully stated herein in Count V.

103.    The interpretive rulings and decisions classifying lawn and garden watering implements, including Melnor products such as the Anvil Spike Sprinkler, as duty-free under HTSUS subheading 9807.00.50, cited and discussed above, constitute a de facto (and/or de jure) established and uniform practice (the "EUP") because CBP consistently classified such products under HTSUS subheading 9807.00.50 until recently, when the CBP issued the CF-29.

104.    The history of CBP's examination, deliberate classification, and treatment of Melnor entries over the six-year period preceding its issuance of the CF-29, as reflected in the Automated Commercial Database ("ACE") data for Melnor's entries, demonstrates the establishment of the EUP, including but not limited to: (1) CBP's liquidation of more than 1,000

unique Melnor entries imported through four different ports under the HTSUS 9817.00.50

subheading; (2) CBP's consideration and review of several protests filed by Melnor in July 2020

following the denial of post-summary corrections actions for some of its nozzle, timer, and wand

watering products; (3) CBP's liquidation of several dozen Melnor entries at multiple ports with a

change decrease applying the duty-free provision of HTSUS subheading 9817.00.50 provision,

after determining that "satisfactory proof of timely use of the merchandise for the purpose

specified by law," 19 C.F.R. § 10.139(a), was presented; and (4) CBP's issuance of a Customs

Form 28 Request for Information on Entry No. 91650719312 in February 2024, regarding the

product's qualification under subheading 9817.00.50, its receipt and consideration of additional

information from Melnor in response, and its ultimate determination that the entry could remain

as classified with no rate advance, with liquidation of the entry following in March 2024.

105.    This history shows a clear pattern of regular review, scrutiny, and deliberation of

Melnor's products under HTSUS subheading 9817.00.50 and CBP's actual use regulations, 19

C.F.R. §§ 10.131–10.139, that goes well beyond passive review under 19 U.S.C. § 1500 and

establishes the existence of the EUP, as the regulations require CBP to affirmatively determine

that the importer has provided "satisfactory proof of timely use of the merchandise as specified

by law." 19 C.F.R. § 10.139(a).

106.    19 U.S.C. § 1315(d) states, in relevant part, that "[n]o administrative ruling

resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury

shall find to have been applicable to imported merchandise under an established and uniform

practice shall be effective with respect to articles entered for consumption or withdrawn from

warehouse for consumption prior to the expiration of thirty days after the date of publication in

the Federal Register of notice of such ruling." 19 U.S.C. § 1315(d).

107.    19 C.F.R. § 177.10(c) states, in relevant part: "Before the publication of a ruling which has the effect of changing an established and uniform practice and which results in the assessment of a higher rate of duty within the meaning of 19 U.S.C. 1315(d), notice that the practice (or prior ruling on which that practice was based) is under review will be published in the Federal Register and interested parties will be given an opportunity to make written submissions with respect to the correctness of the contemplated change." 19 C.F.R. § 177.10(c).

108.    The CF-29 is an administrative ruling for purposes of § 1315(d) because it was the result of considered deliberation within CBP, as reflected in the contemporaneous written correspondence between Melnor and the relevant CBP Import Specialist described above, and explicitly has a prospective effect, broadly proclaiming that HTSUS subheading 9817.00.50 "CAN NO LONGER BE CLAIMED" on any future entries of Melnor sprinklers and other garden and lawn watering implements. *See Int'l Custom Prods.*, 748 F.3d at 1187; *Under the Weather*, 728 F. Supp. 3d at 1350; *see also* Exhibit 1, Protest Attachment C at 44; Exhibit 4.

109.    In issuing the CF-29, and ultimately liquidating Entry No. 91651262031 at a higher rate of duty than was established under the EUP, CBP wrongfully abandoned the EUP without complying with the notice and comment requirements of 19 U.S.C. § 1315(d) and 19 C.F.R. § 177.10(c).

110.    Because Entry No. 91651262031 and the other 133 entries addressed on the CF-29 were entered before CBP complied with these notice and comment requirements and thus before the EUP was properly discontinued, the CF-29 is void and Melnor is entitled to have those entries reliquidated at the rate of duty applicable under the EUP, which is a duty-free classification under HTSUS subheading 9817.00.50. *See, e.g.*, *Heraeus-Amersil, Inc. v. United States*, 795 F.2d 1575, 1582 (Fed. Cir. 1986).

- 27 -

## COUNT VI:
## <u>DUE PROCESS VIOLATION</u>

111.    Melnor restates and incorporates by reference the allegations contained in
Paragraphs 1 through 110 of its Complaint as if fully stated herein in Count VI.

112.    "The fundamental requirement of due process is the opportunity to be heard 'at a
meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)
(quoting *Armstrong v. Mannzo*, 380 U.S. 545, 552 (1965)).

113.    CBP violated Melnor's due process rights under the Fifth Amendment of the U.S.
Constitution when it rejected application of HTSUS subheading 9817.00.50 to Entry No.
91651262031 and the other 133 entries addressed on the CF-29 and prospectively ruled that
HTSUS subheading 9817.00.50 "CAN NO LONGER BE CLAIMED" on any future entries of
Melnor sprinklers and other garden and lawn watering implements without complying with the
notice and comment procedures required under 19 U.S.C. § 1625(c) and/or 19 U.S.C. § 1315(d)
and 19 C.F.R. § 177.10(c), and by continued enforcement of its policy of refusing to rule on
issues pending before this Court even for importers who do not have cases before the Court.

114.    Melnor has an obligation to exercise "reasonable care" in the importation of its
merchandise under 19 U.S.C. § 1484 and is subject to penalty for failure to do so. *See* 19 U.S.C.
§ 1592; 19 C.F.R. Pt. 171, App. B; *United States v. Optrex Am., Inc.*, 560 F. Supp. 2d 1326,
1334–36 (Ct. Int'l Trade 2008).

115.    By departing from its longstanding precedent of interpretive rulings and decisions
and issuing the CF-29 without following the notice and comment procedures required under 19
U.S.C. § 1625(c) and/or 19 U.S.C. § 1315(d) and 19 C.F.R. § 177.10(c), CBP wrongfully denied
Melnor its right to be heard about this significant change in policy and practice before the change

was implemented, and created a situation in which Melnor is subjected to a treatment that is different from that of all other importers of similar or identical merchandise.

116.    By specifically making the CF-29 prospective in nature—broadly proclaiming that HTSUS subheading 9817.00.50 "CAN NO LONGER BE CLAIMED" on any future entries of Melnor sprinklers and other garden and lawn watering implements—CBP has effectively barred Melnor, and only Melnor, from classifying future entries under subheading 9817.00.50, based on Melnor's duty to exercise "reasonable care," until Melnor can obtain meaningful review of the validity and propriety of the CF-29.

**COUNT VII:**
**UNLAWFUL DENIAL OF DUTY-FREE**
**CLASSIFICATION UNDER HTSUS SUBHEADING 9817.00.50**

117.    Melnor restates and incorporates by reference the allegations contained in Paragraphs 1 through 116 of its Complaint as if fully stated herein in Count VII.

118.    This Court has a duty to hold unlawful and set aside CBP actions if those actions are, among other things, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2); *see, e.g.*, *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1288 (Ct. Int'l Trade 2019), *modified*, 476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020).

119.    CBP's denial of duty-free treatment under HTSUS subheading 9817.00.50 to Entry No. 91651262031 was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law because the Anvil Spike Sprinklers imported in that entry satisfy each part of the three-part test that determines eligibility for duty-free treatment under subheading 9817.00.50, and because CBP is applying this decision to Melnor, alone, and not to the myriad of competing importers as indicated by nearly forty years of rulings on point.

120.     First, the Anvil Spike Sprinkler's ordinary tariff classification—HTSUS subheading 8424.82.0020 ("Mechanical appliances (whether or not hand operated) for projecting, dispersing or spraying liquids or powders; fire extinguishers, whether or not charged; spray guns and similar appliances; steam or sand blasting machines and similar jet projecting machines; parts thereof: Other appliances: Agricultural or horticultural: Irrigation equipment: Other [than self-propelled, center pivot]")—is not excluded from HTSUS subheading 9817.00.50 by Chapter 98, Subchapter XVII, U.S. Note 2.

121.     Second, the Anvil Spike Sprinkler meets the requirements of subheading 9817.00.50 because it is an implement used for agricultural or horticultural purposes, specifically, irrigation and watering of living plants in home garden and domestic landscaping environments.

122.     The characteristics of the Anvil Spike Sprinkler are the kind of preordained article, closely analogous to "silos, grain bins, and heaters" that, due to their "size, construction, capacity, type of distribution (if any), and type of market in the area of distribution" have no alternative use other than for agricultural or horticultural purposes, excluding fugitive uses. U.S. Customs Service Decision (C.S.D.) 83-32 (HQ file 069623), dated November 29, 1982. The same decision stated that an importer "may submit certification of actual use" whether the ultimate sale is to end-users or to other who distribute to end users, because it would not be feasible to certify as to actual use unless allowance is made for certification by the importer.

123.     Third, Melnor has fulfilled the "actual use" requirements of 19 C.F.R. §§ 10.131– 10.139 for the Anvil Spike Sprinklers imported under Entry No. 91651262031 by demonstrating (a) that such use was intended at the time of importation, as shown through Melnor's classification of Entry No. 91651262031 under HTSUS subheading 9817.00.50 in its Entry

Summary; (b) that the imported Anvil Spike Sprinklers will actually be used for qualifying purposes, as shown through Melnor's actual use submissions to CBP; and (c) by providing such proof of use within three years after the subject Anvil Spike Sprinklers were entered or withdrawn from warehouse for consumption.

124.    In sum, the Anvil Spike Sprinklers imported under Entry No. 91651262031 qualify for duty-free treatment under HTSUS subheading 9817.00.50, and CBP's denial of duty-free treatment to that entry was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and should be held unlawful and set aside.

### PRAYER FOR RELIEF

WHEREFORE, Melnor respectfully requests that the Court, pursuant to its authority under 5 U.S.C. § 706 and 28 U.S.C. §§ 1361, 2201, 2412, and 2643, enter a judgment:

(1)    holding unlawful and setting aside the CF-29 and the denial of Protest No. 460125138102;

(2)    declaring that the reclassification memorialized in the CF-29 of Entry No. 91651262031 and the other 133 Melnor entries is null and void *ab initio*;

(3)    declaring that duty-free status under HTSUS subheading 9817.00.50 applies to Entry No. 91651262031 and the other 133 Melnor entries addressed in the CF-29;

(4)    entering a writ of mandamus or otherwise ordering CBP and/or specific CBP officers or employees to reliquidate Entry No. 91651262031 and the other 133 Melnor entries addressed in the CF-29 with a duty-free classification under HTSUS subheading 9817.00.50;

(5)    refunding all excess duties paid by Melnor or on Melnor's behalf, together with interest accruing thereon as provided by law;

(6)    enjoining CBP from refusing classification of Melnor's Anvil Spike Sprinklers and other lawn and garden watering implements under HTSUS subheading 9817.00.50 unless and until CBP complies with the applicable statutory and regulatory notice and comment procedures;

(7)    awarding Melnor its costs, expenses, and reasonable attorneys' fees, with special factor enhancements for its attorneys with specialized customs experience; and

(8)    awarding Melnor such other and further relief as the Court deems appropriate.

Respectfully submitted,

Robert A. Shapiro
Thompson Coburn LLP
1909 K Street NW, Suite 600
Washington, D.C. 20006
202-585-6926
rshapiro@thompsoncoburn.com

## COMPLAINT EXHIBIT LIST

| Exhibit | Description |
|---|---|
| 1 | Full Protest Filing of Protest No. 460125138102 |
| 2 | Request for Accelerated Disposition of Protest No. 460125138102 |
| 3 | Proof of Payment of Duties for Entry 91651262031 in Protest No. 460125138102 |
| 4 | CBP CF-29 Notice of Action issued November 1, 2024 |
| 5 | CBP CF-28 Request for Information issued February 29, 2024 and CF-29 Notice of Action issued July 3, 2024 |